**BOARD OF LAW EXAMINERS OF the STATE OF TEXAS, Appellant,**

v.

**James Brian ALLEN, Appellee.**

No. 03–95–00061–CV.

Court of Appeals of Texas, Austin.

Oct. 18, 1995.

Rehearing Overruled Nov. 15, 1995.

Dan Morales, Attorney General, Jennifer Gilchrist, Assistant Attorney General, General Counsel Division, Austin, for Appellant.

Jerry L. Zunker, Zunker, Butler, Estes & Crane, LLP, Austin, for Appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

CARROLL, Chief Justice.

The Board of Law Examiners ("Board") found James Brian Allen to be chemically dependent and recommended him for a probationary license to practice law in Texas. The district court reversed the decision, holding that the Board's order was not supported by substantial evidence. Because we find that substantial evidence does exist to support the Board's order, we will reverse the judgment of the district court.

## BACKGROUND

Appellee James Brian Allen applied for admission to the State Bar of Texas on August 25, 1993. The Board of Law Examiners made a preliminary determination that Allen might suffer from chemical dependency based on certain disclosures Allen made in his Declaration of Intention to Study Law and in the application itself. Because of this determination, the Board was required to order Allen to submit to a treatment facility for a chemical dependency evaluation, and Allen was evaluated on December 3, 1993. *See* Tex.R. Governing Bar Admission 10(b)(1).

The Board held a hearing on April 22, 1994 to determine if Allen actually did suffer from chemical dependency. Notably, Allen conceded that there was sufficient evidence for the Board to make a preliminary determination of chemical dependency and thus to justify the hearing. At the hearing, the Board determined that Allen, in fact, suffers from chemical dependency and ordered that he be awarded a probationary license for a period of two years, subject to certain restrictions and conditions. These conditions included, among other things, abstinence from alcohol, obtaining psychiatric or psychological care, compliance with the Lawyer's Assistance Program, participation in Alcoholics Anonymous, and submission to random alcohol/drug screens.

Allen exercised his right to judicial review, and the district court found that the Board's order was not supported by substantial evidence. The district court remanded the case to the Board and ordered that the "Board immediately certify James Brian Allen to the Supreme Court of Texas for issuance of a regular license to practice law."

## DISCUSSION

Appellant Board attacks the judgment of the district court by three points of error. In its first two points of error, the Board asserts that the trial court erred in setting aside the Board's order because: (1) the chemical dependency evaluation was properly before the Board for consideration, and (2) the order is supported by substantial evidence in the record even in the absence of the chemical dependency evaluation. In its third point, the Board asserts that the trial court abused its discretion by ordering the Board to certify Allen to the supreme court for issuance of a regular license to practice law.

We will initially address the Board's second point of error in which it argues that the trial court erred in setting aside its order because the order is supported by substantial evidence even in the absence of the chemical dependency evaluation. We note that, because of its supervisory role in the admission process, the Board is essential to preserving the integrity and character of the Texas Bar. *Board of Law Examiners v. Stevens,* 868 S.W.2d 773, 776 (Tex.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2676, 129 L.Ed.2d 811 (1994). The supreme court grants the Board considerable discretion to evaluate applicants based

upon the promulgated admission standards. *Id.* at 776. Before it may recommend a person for a license, however, the Board must be convinced "that the person is of the moral character and of the capacity and attainment proper for that person to be licensed." Tex.Gov't Code Ann. § 82.004(c) (West 1988).

The Rules Governing Admission to the Bar of Texas (the "Rules"), which have the same effect as statutes, dictate that the Board shall complete an investigation and determine that an applicant possesses good moral character and fitness before that person shall be eligible for bar admission. Tex.R. Governing Bar Admission 4(a).

> Fitness, as used in these Rules, is the assessment of mental and emotional health as it affects the competence of a prospective lawyer. The purpose of requiring an Applicant to possess this fitness is to exclude from the practice of law any person having a mental or emotional illness or condition which would be likely to prevent the person from carrying out duties to clients, courts or the profession. A person may be of good moral character, but may be incapacitated from proper discharge of his or her duties as a lawyer by such illness or condition.

Tex.R. Governing Bar Admission 4(c). When the Board makes a negative character and fitness determination, an applicant is entitled to judicial review of the Board's decision. *See* Tex.R. Governing Bar Admission 15(i). The reviewing court may affirm or remand the matter to the Board depending on whether or not the decision "is *reasonably supported* by substantial evidence." Tex.R. Governing Bar Admission 15(i)(5) (emphasis added).

The Administrative Procedure Act ("APA") does not govern Board procedures, however, reference to the APA sections which address the scope of judicial review under the substantial evidence rule is beneficial. *See Stevens,* 868 S.W.2d at 777 (citing Tex.Gov't Code Ann. §§ 2001.001–2001.902 (West 1995)). Under the APA, "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency

discretion." Tex.Gov't Code Ann. § 2001.174 (West 1995); *see Railroad Comm'n v. Pend Oreille Oil & Gas Co.,* 817 S.W.2d 36, 41 (Tex.1991) (substantial evidence rule "prevents the court from usurping the agency's adjudicative authority even though the court would have struck a different balance"). A court may affirm the agency decision in whole or in part and must reverse or remand the agency's decision only if "the administrative findings, inferences, conclusions, or decisions are: ... (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code Ann. § 2001.174; *see also Stevens,* 868 S.W.2d at 777–78 (quoting same statute). "Although substantial evidence is more than a mere scintilla, *the evidence may actually preponderate against the decision of the agency and nonetheless amount to substantial evidence." City of El Paso v. Public Util. Comm'n,* 883 S.W.2d 179, 185 (Tex. 1994) (emphasis added).

In this case, Allen put his fitness to practice law in issue through statements he made in his Declaration of Intention to Study Law and in his application for admission to the Texas Bar. At the hearing to determine chemical dependency, Allen's testimony indicated that he had a past history of alcohol abuse. Evidence established that Allen applied for admission to the Oklahoma bar in July of 1993. In his application, Allen admitted to the Oklahoma Board of Law Examiners that he had been addicted to alcohol. He testified that he dropped out of Oklahoma City University Law School in 1991 because of alcohol abuse. Allen also affirmed that he unsuccessfully attempted to stop drinking some time before August of 1989.

Additionally, Allen discussed civil and criminal legal problems that had arisen as a consequence of excessive drinking. Specifically, in 1985, Allen was arrested for public intoxication when the car in which he was a passenger was pulled over and a small quantity of marijuana was found in the car. In 1988, Allen was arrested and charged with driving while intoxicated. Allen had a .21

blood-alcohol content and was driving down the wrong side of the road when he collided head-on with a pickup truck. Further, in 1991, Allen was charged with criminal trespass and disorderly conduct because he unwittingly entered someone else's house while he was intoxicated.

Despite his statements in the Oklahoma application, Allen testified that it was now his belief that he drank alcohol in an attempt to self-treat the depression from which he suffered and that he was not addicted to alcohol. Allen explained that the only reason he told the Oklahoma Board that he was addicted was to offer something by way of explanation for his behavioral wrongdoings.

Allen's medical expert, Dr. Richard E. Coons, testified that he administered a general psychiatric exam to Allen on March 23, 1994 and determined that Allen was suffering from depression. Dr. Coons stated his belief that Allen was overdrinking at least in part to self-treat his depression and that Allen was less likely to resort to alcohol if he was cured of the depression. However, Dr. Coons admitted in his testimony that, if Allen stopped taking his prescribed anti-depressant medication, a further problem with alcohol was a possibility.

Allen was sober from December 1992 until the date of the hearing. During this time he married and found strength in his spouse as well as in his church. Allen testified that he was now more confident, was sleeping better and that his anxiety level had dropped. He believed that his anti-depressant medicine was effectively curing him and claimed that he no longer desires alcohol. It is also noteworthy that Allen was employed as a legal intern in an Austin law office at the time of the hearing and had been so employed since July or August of 1993. Will Wilson, an attorney in that office, testified that Allen has properly discharged his duties under the Code of Professional Responsibility and that he believed Allen would continue to do so.

Allen asserts that he is not *presently* chemically dependent as evident by his seventeen months of sobriety. According to Allen, his past behavioral indiscretions are not indicative of *present* chemical dependency. Allen points to Texas Rule Governing Bar Admission 4(c), which states that "[t]he fitness required is a present fitness, and prior mental or emotional illness or conditions are relevant only so far as they indicate the existence of a present lack of fitness." The supreme court, however, granted the Board considerable discretion in evaluating applicants based upon the promulgated admission standards. *Stevens,* 868 S.W.2d at 776. Based on the evidence, the Board found that Allen presently suffers from chemical dependency and that he is in need of psychiatric assistance. Apparently, the Board found that Allen's "prior mental or emotional illness or conditions" were relevant as tending to indicate a present lack of fitness.

The supreme court has not undertaken the impossible task of implementing specific standards for the Board to employ when attempting to determine whether an applicant has been "clean" or sober long enough to remove the chemically dependent label. The Board must look at the evidence in each individual situation to determine chemical dependence. After a "good moral character and fitness" hearing, the Board has the discretion to recommend, among other things, that an applicant be granted a regular license, a probationary license, or no license at all. Tex.R. Governing Bar Admission 15(f). "The Board shall not have the authority to refuse to recommend the granting of a Probationary License to an Applicant who has passed the applicable bar examination solely because the Applicant suffers from chemical dependency." Tex.R. Governing Bar Admission 16(b).

Pursuant to its authority under the Rules, the Board ordered that Allen's good moral character and fitness be conditionally approved and that he be recommended for a probationary license upon passing the Texas Bar Examination. *See* Tex.R. Governing Bar Admission 16(a)(1). The probationary license extended for two years and contained thirteen conditions. Among other things, these conditions included abstinence from alcohol, obtaining psychiatric or psychological care, compliance with the Lawyers' Assistance Program, participation in Alcoholics Anonymous, and submission to random alcohol/drug screens. Although we may not agree that certain of the thirteen conditions

comply with Texas Government Code section 82.038 or with Rule 16(c) of the Rules Governing Admission to the Bar of Texas, neither the Board's power to delineate such conditions, nor the extent of such conditions are challenged by this appeal and thus we do not address those issues.

■ In this case, Allen had been sober for seventeen months prior to the hearing, but he was not participating in any structured treatment program. In light of all the evidence of alcohol abuse, including Allen's previous unsuccessful attempt to stop drinking, his seventeen months of sobriety did not remove the Board's discretion to find Allen presently chemically dependent. We refuse to set the precedent that seventeen months is an adequate period of sobriety under any circumstance to eliminate the possibility that an applicant remains chemically dependent. The Board did not improperly deny Allen an opportunity to practice law because he was found to be chemically dependent, but rather attempted to exercise its discretion properly by awarding Allen a probationary license. The district court improperly usurped the Board's authority and replaced the Board's judgment with its own. Based on the evidence in the administrative record excluding the chemical dependency evaluation,[1] we find that there was substantial evidence to reasonably support the Board's decision that Allen was presently chemically dependent.

### CONCLUSION

We hold that, because substantial evidence existed in the record to support the Board's decision that Allen was presently chemically dependent at the time of the hearing, the district court improperly substituted its judgment for that of the Board. Because we sustain the Board's second point of error, it is unnecessary to address appellant's remaining points of error. We reverse the district court's judgment and render judgment affirming the Board's order.

---

1. The failure to consider the chemical dependency evaluation in our decision is in no way indicative of our opinion as to whether such evaluation was properly before the Board for consideration at the good character and fitness hearing.